

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-25-2007

# Biskupski v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 06-1887

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Biskupski v. Atty Gen USA" (2007). *2007 Decisions.* Paper 323.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/323

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-1887
_____

DARIUSZ BISKUPSKI,

Petitioner,

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

_____

On Review of a Decision of the
Board of Immigration Appeals
(Agency No. A73-081-356)
Immigration Judge: Alberto J. Riefkohl

Argued: June 19, 2007

Before: McKEE, FISHER, and CHAGARES, <u>Circuit Judges</u>.

_____

(Filed: September 25, 2007)

Thomas E. Moseley, Esq., Argued
One Gateway Center, Suite 2600
Newark, NJ 07102
Attorney for Petitioner

James E. Grimes, Esq., Argued
William C. Minick, Esq.
United States Department of Justice
Office of Immigration Litigation, Civil Division
P.O. Box. 878
Ben Franklin Station
Washington, DC 20044
Attorney for Respondent


OPINION OF THE COURT


CHAGARES, Circuit Judge.

This case presents an issue of first impression in this Circuit and requires us to interpret the meaning of "actions taken" in section 321(c) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009-546. For the reasons expressed below, we hold that "actions taken" refers to orders and decisions of an immigration judge (IJ) or the Board of Immigration Appeals (BIA) which apply the "aggravated felony" definitions in 8 U.S.C. § 1101(a)(43) to determine the availability of hardship relief. Because the BIA's final order denied petitioner Dariusz Biskupski relief on this basis, we conclude that the order was an "action taken" within the contemplation of section 321(c). As such, the expanded definition in 8 U.S.C. § 1101(a)(43) for aggravated felonies applied to Biskupski. Accordingly, the petition for review will be denied.

I.

In December 1988, at age twenty nine, Biskupski left his native Poland and entered the United States. His visa allowed him to remain until June 20, 1989. However, Biskupski overstayed his visa. As of January 23, 1994, Biskupski worked as a taxi driver and dispatcher for a company in Clifton, New Jersey. During his off hours, he moonlighted as a chauffeur, making trips to the local airports and occasionally to points beyond such as Washington D.C., Philadelphia, and areas within New England. He advertised

2

his services almost exclusively within the local Polish community.

After returning home from work on or about January 22, his then-girlfriend told Biskupski she had received a call to pick up several Polish people in upstate New York and bring them to New Jersey. Biskupski and his girlfriend departed, their destination being a gas-station/restaurant called the Bear's Den on Route 37, which is in the middle of the Akwesasne Indian Reservation bordering Canada in upstate New York. They arrived shortly after midnight on January 23 and met the intended passengers. Approximately eleven miles into the return trip, Biskupski encountered a routine Driving While Intoxicated roadblock. State police stopped Biskupski, and, after questioning him and his passengers, the police surmised that Biskupski was transporting illegal aliens. Although Biskupski maintained that he did not know his passengers had illegally entered the United States, Biskupski was arrested and charged with aiding and abetting alien smuggling, a misdemeanor violation of 8 U.S.C. § 1324(a)(2)(A). He pleaded guilty and, on January 31, 1994, he was sentenced to thirty days' imprisonment and a $250 fine.

On January 25, 1994, the Immigration and Naturalization Service (INS)[1] placed Biskupski in deportation proceedings by serving him with an Order to Show Cause (OTSC). In the OTSC, the government alleged that Biskupski was deportable under 8 U.S.C. § 1251(a)(1)(B) (remaining in the United States longer than permitted), 8 U.S.C. § 1251(a)(1)(C)(i) (failing to maintain or comply with the conditions of nonimmigrant status under which he was admitted), and 8 U.S.C. § 1251(a)(1)(E)(i) (knowingly assisting, aiding, or abetting another alien to enter illegally, within

---

[1] On March 1, 2003, Congress transferred the INS's functions to the Bureau of Immigration and Customs Enforcement (ICE) and the U.S. Customs and Immigration Service (USCIS) of the United States Department of Homeland Security (DHS). Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 441, 451 & 471, 116 Stat. 2135, 2192, 2195-97 & 2205 (codified at 6 U.S.C. §§ 251, 271 & 291); see also Zheng v. Gonzales, 422 F.3d 98, 103 n.2 (3d Cir. 2005) (citing Knapik v. Ashcroft, 384 F.3d 84, 86 n.2 (3d Cir. 2004)).

five years of his entry into the United States).[2] The government subsequently withdrew the allegation that Biskupski was deportable under 8 U.S.C. § 1251(a)(1)(E)(i), because the events supporting his conviction occurred more than five years after Biskupski's 1988 admission into the United States.

At an immigration hearing in Newark, New Jersey on December 19, 1996,[3] the IJ found that the government had established Biskupski's prior conviction by clear and convincing evidence. The IJ accepted Biskupski's application for suspension of deportation, but queried, in light of the passage of IIRIRA, whether Biskupski's conviction for alien smuggling would render him statutorily ineligible for suspension of deportation. The IJ heard testimony from Biskupski and his witnesses in support of his application for relief. However, the hearing was continued to permit the parties to address the legal issue of eligibility for suspension. For reasons that are not clear, Biskupski's case was not reconvened until July 25, 2000. The proceedings were again continued until the final hearing on August 11, 2003.

On April 20, 2005, the IJ issued a written decision, superceding a prior oral decision. The IJ ruled that Biskupski's conviction for alien smuggling rendered him ineligible for suspension of deportation and denied that application. The IJ also denied Biskupski's applications for asylum, withholding of deportation and protection under the Convention Against Torture (CAT).[4] Biskupski appealed the IJ's decision to the BIA.

---

[2] Section 1251 of Title 8 of the United States Code was redesignated as § 1227 by the passage of IIRIRA in 1996. IIRIRA, Pub. L. No. 104-208, § 305, 110 Stat. 3009-546, 3009-598 (1996).

[3] Biskupski's case was transferred from Boston, Massachusetts to Newark, New Jersey on February 28, 1996.

[4] United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, implemented in the United States by the Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. No. 105-277, § 2242, 112 Stat. 2681-761, 2681-822 (codified at 8

On March 7, 2006, the BIA dismissed the appeal, ruling that Biskupski's prior conviction under 8 U.S.C. § 1324(a)(2)(A) barred eligibility for relief under former section 244 of the of the Immigration and Nationality Act (INA), 8 U.S.C. § 1254 (1993).[5] Under former section 244, an alien qualifies for discretionary suspension of deportation by demonstrating both physical presence in the United States for a continuous period of not less than seven years immediately preceding the date of application for such relief and good moral character. 8 U.S.C. § 1254(a)(1) (1993). However, an alien "who at any time has been convicted of an aggravated felony (as defined in subsection (a)(43) of this section)" cannot demonstrate the requisite good moral character. 8 U.S.C. § 1101(f)(8). Here, the BIA found that Biskupski's conviction was for an aggravated felony as defined by 8 U.S.C. § 1101(a)(43)(N). Therefore, Biskupski could not show the good moral character necessary to be eligible for suspension of deportation. This petition for review followed.

## II.

Biskupski pleaded guilty to 8 U.S.C. § 1324(a)(2), which states in pertinent part:

> Any person who, knowing or in reckless disregard of the fact that an alien has not received prior official authorization to come to, enter, or reside in the United States, brings to or attempts to bring to the United States in any manner whatsoever, such

U.S.C. § 1231).

---

[5] On appeal to the BIA, Biskupski did not raise any challenges to the denial of his applications for asylum, withholding of deportation or protection under CAT and, likewise, does not raise any such challenges to this Court.

5

alien, regardless of any official action which may later be taken with respect to such alien shall, for each alien in respect to whom a violation of this paragraph occurs--

(A) be fined in accordance with Title 18 or imprisoned not more than one year, or both[.]

This statute has been interpreted to include transporting illegal aliens from one place to another within the United States. See, e.g., Gavilan-Cuate v. Yetter, 276 F.3d 418, 419 n.1 (8th Cir. 2002) (citing Matter of Ruiz-Romero, 22 I & N Dec. 486 (BIA 1999)).

When Congress added the "aggravated felony" provision to the INA, Pub. L. No. 82-414, 66 Stat. 163 (1952) (codified as amended at 8 U.S.C. §§ 1101-1537) with the enactment of the Anti-Drug Abuse Act of 1988, Pub L. No. 100-690, § 7347, 102 Stat. 4181, 4471 (1988), the statutory definition of "aggravated felony" in 8 U.S.C. § 1101(a)(43) did not include offenses under 8 U.S.C. § 1324(a)(1)(A) or (2). In 1994, when the INS commenced deportation proceedings against Biskupski, his crime of conviction was still not among those constituting an "aggravated felony" within the meaning of the INA.

It was not until 1996 that Congress enacted legislation making certain changes significant to Biskupski's situation. Specifically, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), in which it amended the definition of "aggravated felony" in 8 U.S.C. § 1101(a)(43)(N) to include "an offense described in paragraph (1)(A) or (2) of section 274(a) [codified at 8 U.S.C. § 1324(a)] (relating to alien smuggling) for which the term of imprisonment is at least 5 years." AEDPA, Pub. L. No. 104-132, § 440(e)(3), 110 Stat. 1214, 1278 (1996).

Shortly thereafter, Congress enacted IIRIRA, further amending § 1101(a)(43)(N) by striking the minimum five-year term

6

of imprisonment requirement.[6]  IIRIRA, § 321(a)(8), 110 Stat. at 3009-628 (1996).  Congress expressly mandated that the changes made to the term "aggravated felony" in 8 U.S.C. § 1101(a)(43) "applie[d] regardless of whether the conviction was entered *before, on, or after* the date of enactment of this paragraph."  IIRIRA, § 321(b), 110 Stat. at 3009-628 (emphasis added). Congress dictated that "[t]he amendments made by this section shall apply to *actions taken* on or after the date of the enactment of this Act, regardless of when the conviction occurred."  IIRIRA, § 321(c), 110 Stat. at 3009-628 (emphasis added).

The term "actions taken" is not defined anywhere in IIRIRA.  Biskupski argues that the term relates to such "actions" as the initiation of deportation proceedings against him in 1994 or the submission of his application for suspension of deportation on August 16, 1996.[7]  Because these "actions" occurred pre-IIRIRA, Biskupski contends that the pre-IIRIRA definitions of aggravated felony should apply, which did not encompass the crime for which he was convicted.  At the other end of the temporal spectrum, the government argues that "actions taken" means final orders and decisions of the IJ or the BIA in adjudicating Biskupski's case. The government asserts that because the BIA issued its final decision on March 7, 2006, the IIRIRA amendments to the definition of aggravated felony apply to render Biskupski ineligible for suspension relief.

---

[6] By the same amendment, Congress created an exception in the case of a first offense where the alien affirmatively demonstrated that he or she "committed the offense for the purpose of assisting, abetting, or aiding only the alien's spouse, child or parent . . . ."  IIRIRA, § 321(a)(8), 110 Stat. at 3009-628.  This exception does not apply to Biskupski.

[7] We reject Biskupski's argument that the IJ in Boston made a ruling that he was eligible for suspension relief.  The IJ's passing observation that Biskupski might be eligible for suspension of deportation was not an "action taken" within the meaning of section 321.

III.

We lack jurisdiction to review final orders of removal against an alien removable as an aggravated felon. 8 U.S.C. § 1252(a)(2)(C); Drakes v. Zimski, 240 F.3d 246, 247 (3d Cir. 2001). We nonetheless retain jurisdiction to review questions of law, 8 U.S.C. § 1252(a)(2)(D), and we have jurisdiction to determine our jurisdiction, United States v. Ruiz, 536 U.S. 622, 628 (2002). Whether a statute has retroactive application and issues of statutory construction are questions of law over which we exercise plenary review. See Park v. Attorney General, 472 F.3d 66, 70-71 (3d Cir. 2006).

A.

Before turning to the issue of retroactivity, we will address Biskupski's argument that his conviction for a federal misdemeanor was a crime insufficiently serious to be considered an "aggravated felony" in this context.[8] See Pet. Reply Br. at 13. According to Biskupski, the word "felony" has one defining characteristic, namely an offense subject to a sentence of one year or more, see United States v. Graham, 169 F.3d 787, 792 (3d Cir. 1999) ("[U]nder federal law, a felony is defined as a crime that has a maximum term of more than one year."), which should be held to inhere in every aggravated felony provision in § 1101(a)(43) unless Congress evinces a contrary intent. Biskupski argues that Congress's removal of the five-year sentence requirement from § 1101(a)(43)(N) by IIRIRA demonstrates its intent to "fall[] back . . . on the general requirement that an 'aggravated felony' be a felony." Pet. Reply Br. at 15.

Biskupski points to Lopez v. Gonzales, ___ U.S. ___, 127 S. Ct. 625 (2006), for the proposition that interpreting

_____

[8] We find no merit to Biskupski's waiver and law of the case arguments. Biskupski withdrew his argument that the present aggravated felony definition does not include aiding and abetting offenses. Letter from Thomas E. Moseley, Esq. to Marcia Waldron, Clerk of the Court (April 25, 2007).

8

misdemeanor to mean felony is "just what the English language tells us not to expect," id. at 630, so Biskupski's misdemeanor conviction should not be held to constitute an aggravated felony. The government responds that where Congress defines a term of art like "aggravated felony" to mean something particular, as here – alien smuggling defined by 8 U.S.C. § 1324(a)(2) – then alien smuggling is an aggravated felony, even if technically only a misdemeanor under federal law. Compare 18 U.S.C. § 3559(a)(6) (classifying an offense with a maximum term of imprisonment of one year or less but more than six months as a Class A misdemeanor) with 8 U.S.C. § 1324(a)(2)(A) (providing a maximum of one year imprisonment).[9]

Our analysis begins with the statutory text. If the text of the statute is plain and unambiguous, then our analysis also ends there. Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 438 (1999). This is so because our role "is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, 'that language must ordinarily be regarded as conclusive.'" Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 570 (1982) (quoting Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980)).

In this case, we are called upon to analyze whether the definition of "aggravated felony" in 8 U.S.C. § 1101(a)(43)(N) includes the federal misdemeanor Biskupski committed. If, as here, "a statute includes an explicit definition, we must follow that definition, even if it varies from that term's ordinary meaning."

---

[9] Biskupski lampoons the government's argument by quoting a passage from a well-known Lewis Carroll work: "'When *I* use a word,' Humpty Dumpty said, in rather a scornful tone, 'it means just what I choose it to mean – neither more nor less.'" Through the Looking Glass, in The Complete Works of Lewis Carroll 196 (1939).

Stenberg v. Carhart, 530 U.S. 914, 942 (2000); see also Meese v. Keene, 481 U.S. 465, 484 (1987) (recognizing "the respect we normally owe to the Legislature's power to define the terms that it uses in legislation"); Lawson v. Suwannee Fruit & S.S. Co., 336 U.S. 198, 201 (1949) ("Statutory definitions control the meaning of statutory words . . . ."). Where a definition informs what a particular term "means," that definition will include whatever express meanings follow. See Colautti v. Franklin, 439 U.S. 379, 392 n.10 (1979) ("As a rule, [a] definition which declares what a term 'means' . . . excludes any meaning that is not stated.") (quotation marks and citation omitted) (alterations in original), overruled in part on other grounds by Webster v. Reproductive Health Servs., 492 U.S. 490 (1989).

By placing the term "aggravated felony" in quotations followed by "means" Congress made absolutely clear that "aggravated felony" is a term of art defined by the subsections that follow. We must apply the definition of that term provided by Congress. Congress plainly and unambiguously included the offenses described in 8 U.S.C. § 1324(a)(1)(A) and (2) as part of the definition of "aggravated felony" in § 1101(a)(43)(N). Accordingly, we reject Biskupski's argument that Congress meant to "fall back" to the time-honored, one-year distinction between felonies and misdemeanors. It is neither our task nor our prerogative to rewrite the definition that Congress provided, especially considering the traditional deference we accord to Congress when it legislates in the area of immigration. See Escobar v. Gonzales, 417 F.3d 363, 368 (3d Cir. 2005). Our holding today is consistent with our decision in United States v. Graham, supra, which applied the § 1101(a)(43) definition of "aggravated felony" as incorporated into the sentencing guidelines, see U.S.S.G. § 2L1.2(b)(1)(B), to determine increases to base offense levels in the sentencing context. In Graham, the Court considered "whether a misdemeanor can be an 'aggravated felony' under a provision of federal law even if it is not, technically speaking, a felony at all." 169 F.3d at 788. We answered that question in the affirmative and determined that a misdemeanor theft could be an aggravated felony under 8 U.S.C. §

10

1101(a)(43)(G).[10]

In sum, we hold that Biskupski's misdemeanor conviction for aiding and abetting alien smuggling under 8 U.S.C. § 1324(a)(2) constitutes an "aggravated felony," as that term is defined in 8 U.S.C. § 1101(a)(43)(N).

B.

We turn now to the issue of retroactivity and the dispute over the meaning of "actions taken" in section 321(c) of IIRIRA.

The first question in determining whether a civil statute applies retroactively is whether Congress has expressly provided for retroactive application. Landgraf v. USI Film Prods., 511 U.S. 244, 280 (1994). Section 321(b) of IIRIRA is a clear expression of Congress's intent to apply the definition of "aggravated felony" in § 1101(a)(43)(N) retroactively. See INS v. St. Cyr, 533 U.S. 289, 318-19 (2001); accord Garrido-Morato v. Gonzales, 485 F.3d 319, 323 (5th Cir. 2007); Mohammed v. Ashcroft, 261 F.3d 1244, 1250 (11th Cir. 2001). Just as clearly, section 321(c) limits the applicability of the new definitions of aggravated felony to "actions taken" on or after September 30, 1996. The focus of section 321(c)

_____

[10]Other courts of appeals have followed this Court's lead in determining that certain misdemeanors may constitute aggravated felonies under the definition set forth in § 1101(a)(43). See, e.g., United States v. Cordoza-Estrada, 385 F.3d 56 (1st Cir. 2004) (per curiam) (misdemeanor assault); United States v. Gonzalez-Tamariz, 310 F.3d 1168 (9th Cir. 2002) (misdemeanor battery); United States v. Saenz-Mendoza, 287 F.3d 1011 (10th Cir. 2002) (misdemeanor child abuse); United States v. Urias-Escobar, 281 F.3d 165 (5th Cir. 2002) (misdemeanor assault); Guerrero-Perez v. INS, 242 F.3d 727 (7th Cir. 2001) (misdemeanor sexual abuse of a minor); United States v. Christopher, 239 F.3d 1191 (11th Cir. 2001) (misdemeanor theft offense); United States v. Pacheco, 225 F.3d 148 (2d Cir. 2000) (misdemeanor domestic assault, theft); Wireko v. Reno, 211 F.3d 833 (4th Cir. 2000) (misdemeanor sexual battery).

11

is prospective, not retrospective. Biskupski argues on appeal that although the definition of "aggravated felony" may apply retroactively to his 1994 conviction, the crucial issue is whether the language "actions taken" in section 321(c) should be interpreted with a look backwards to preclude the application of the changes effected by IIRIRA to cases, like his, that commenced pre-IIRIRA.

Although we have not yet addressed the meaning of the phrase "actions taken," several of our sister circuits have examined the issue. Indeed, an argument similar to Biskupski's was raised in Valderrama-Fonseca v. INS, 116 F.3d 853 (9th Cir. 1997). The Court of Appeals for the Ninth Circuit described the issue as follows:

> [W]hile it is clear that it doesn't matter when the conviction occurred if the IIRIRA "aggravated felony" amendments apply, it is not clear that those amendments apply. It is clear enough that they apply to "actions taken" after September 30, 1996, but neither the text nor the legislative history defines the "actions" that, if "taken," trigger the applicability of IIRIRA § 321.

Id. at 856. In Valderrama-Fonseca, the alien was convicted of burglary in 1985. Id. at 854. The INS initiated deportation proceedings in October 1989. Id. at 855. In 1992, the IJ determined that Valderrama was deportable for having been convicted of a crime of moral turpitude and denied his request for discretionary relief from deportation. Id. Valderrama appealed to the BIA, which affirmed the IJ's decision in June 1995. Id.

Prior to oral argument, AEDPA and IIRIRA took effect, barring judicial review of final orders of deportation against aggravated felons. The question before the court of appeals was whether the IIRIRA "aggravated felony" amendments were applicable to Valderrama's case. The answer turned, as it does here, on the meaning of the phrase "actions taken" in section 321(c).

12

The Valderrama-Fonseca court examined three possible meanings of "actions taken" that could potentially trigger the applicability of section 321:

> One is to say that "actions taken" refers to orders and decisions issued against an alien by the Attorney General acting through the BIA or Immigration Judge. This makes logical and practical sense, as "actions taken" is easily understood to encompass things done by an agency to an alien. . . . Another possibility is that "actions taken" refers to steps by the alien, such as applying for discretionary relief or petitioning for review of the BIA's decision. . . . A third possibility is the INS's preferred construct that "actions taken" means any action by anyone, including this court. While the suggestion is not untenable, as courts do act, it seems implausible; it would mean that our jurisdiction would depend on when we got around to hearing a particular petition and to taking the action that would be an "action taken" within the meaning of § 321(c).

Id. at 856.

Ultimately, the Court of Appeals for the Ninth Circuit applied the first definition – that the phrase "actions taken" refers to orders and decisions of the IJ and BIA. Because the decisions of the IJ and the BIA pre-dated September 30, 1996, the effective date of IIRIRA, the court concluded that "the gateway to IIRIRA's aggravated felony amendments ha[d] not been opened." Id. at 857; see also Xiong v. INS, 173 F.3d 601, 607 (7th Cir. 1999) (applying the same definition of "actions taken" and holding that "the BIA's dismissal of Xiong's appeal on August 21, 1999 was an action

13

taken that triggered the new definition of 'aggravated felony'"); Choeum v. INS, 129 F.3d 29, 37 (1st Cir. 1997) ("The first definition is the strongest and most sensible: that 'actions taken' refers to actions and decisions of the Attorney General.").

In Garrido-Morato v. Gonzales, 485 F.3d 319 (5th Cir. 2007), the INS commenced deportation proceedings in March 1996 against Garrido-Morato, a native Mexican who entered the United States in 1986, charging her with overstaying her 72-hour visitor visa. Id. at 320-21. The following events took place prior to the enactment of IIRIRA: Garrido-Morato pled guilty to one count of harboring aliens; a judgment of conviction was entered against her; and she was sentenced to three years of probation. Id. at 321. On September 10, 1996, she applied for suspension of deportation under section 244 of the INA. Id. As in Biskupski's case, her actions of pleading guilty and filing for relief from deportation predated the enactment of IIRIRA on September 30, 1996.

The crux of Garrido-Morato's argument, like Biskupski's, was whether section 321(c) of IIRIRA applied to bar her eligibility for suspension of deportation or whether application of section 321 was impermissibly retroactive. See id. at 323 ("The most favorable argument to be made is that § 321(c) is the effective date provision for the entire section: § 321(c) states to what and when the statute itself (not merely its definitions) is to be applied; the statute is to be applied to (1) 'actions' that are 'taken' (2) on and after the date of enactment."). After reviewing the possible meanings of "actions taken," the Court of Appeals for the Fifth Circuit applied the definition espoused in Valderrama-Fonseca, specifically rejecting Garrido-Morato's position that "actions taken" refers to the actions she took in pleading guilty and applying for hardship relief. The court stated, in pertinent part:

> Although "actions taken" may be more inclusive, we fully agree that the term includes actions and decisions of the Attorney General acting through an immigration judge or the BIA. But it is also clear to us that "actions taken" are actions taken *under* the

14

> statute. Indeed, "actions taken" must refer only to such actions taken under the statute because § 321(c) is an effective date provision for § 321 and it thus only speaks to "actions" that are "taken" under that section, such as determining the meaning of "aggravated felony" and thus the availability of discretionary hardship relief to such felons. It does not speak to "actions" that are not taken pursuant to the statute.

Id. at 324 (quotation marks and citation omitted). The IJ denied Garrido-Morato's hardship relief in March 1997. "[B]ecause that ruling, i.e., 'action taken,' occurred after September 30, 1996, § 321(c) compelled the IJ to utilize the retroactive definition and find Garrido's conviction to be an aggravated felony." Id.

In Tran v. Gonzales, 447 F.3d 937 (6th Cir. 2006), the Court of Appeals for the Sixth Circuit reached a different interpretation of section 321(c). The Tran court reasoned:

> Section 321(c) explicitly limits the application of the revised definition of "aggravated felony" to *proceedings initiated* after September 30, 1996. Section 321(c) is a restriction on Section 321(b). As the agency itself has held, even though § 321(b) established that the revised definition of an aggravated felony can encompass any conviction regardless of when it occurred, "Section 321(c) . . . limit[s] the definition . . . by stating that the amendments will apply only to 'actions taken' after the date of the IIRIRA's enactment, September 30, 1996." Matter of Truong, 22 I. & N. Dec. 1090, 1096 (BIA 1999). We

15

> need not go through a lengthy statutory analysis to conclude that § 321(c) is not retroactive since the language of the section speaks for itself. Section 321(c) explicitly limits the expanded definition of "aggravated felony" to prospective deportation proceedings. The problem with Tran's position is that this proceeding began in December 2000, well after § 321(c)'s temporal limitation.

Id. at 941 (emphasis added) (alterations in original). Biskupski's deportation proceedings were initiated in January 1994, well before the changes effected by IIRIRA. Understandably, Biskupski relies heavily on Tran.

The Tran court eschewed critical analysis of the meaning of the phrase "actions taken," instead substituting in its place the phrase "proceedings initiated." We can find no support for this interpretation either in case law or statutory text. Even the case cited for support, Matter of Truong, supra, applied the Valderrama-Fonseca definition of "actions taken." Accordingly, we decline to follow Tran.

We adopt the definition of "actions taken" articulated by the Garrido-Morato court. Specifically, the definition of "aggravated felony," as amended by AEDPA § 440(e) and IIRIRA § 321(a), is applicable to "actions taken," which we hold to mean orders or decisions of the IJ or BIA which apply the "aggravated felony" definitions and thus determine the availability of discretionary hardship relief to such felons. This definition of "actions taken" makes sense considering that until a final agency order is issued by either an IJ or the BIA, an alien remains the subject of administrative adjudication "and has . . . not established any right to the benefit he is seeking to obtain by his application." Ortiz v. INS, 179 F.3d 1148, 1156 (9th Cir. 1999) (quotation marks omitted). In the present case, the BIA determined that Biskupski was ineligible for suspension of deportation as an aggravated felon

16

on March 7, 2006, well after the IIRIRA amendments took effect. The BIA must apply the law existing at the time of its review, id., and we conclude that there was no impermissible retroactive effect in doing so.

IV.

Because we hold that Biskupski's federal misdemeanor conviction constitutes an "aggravated felony" within the meaning of 8 U.S.C. § 1101(a)(43)(N) and because we conclude that the statute is not impermissibly retroactive as applied to Biskupski, we will deny the petition for review.