PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2767
_____

NIZAR AL-SHARIF,

Appellant

v.

UNITED STATES CITIZENSHIP
AND IMMIGRATION SERVICES
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 10-cv-01435)
District Judge:  Honorable Claire C. Cecchi
_____

Argued before Original Panel on June 13, 2013
Submitted Sua Sponte En Banc on August 15, 2013

Before:  McKEE, *Chief Judge*, RENDELL,
AMBRO, FUENTES, SMITH, FISHER, JORDAN,
HARDIMAN, GREENAWAY, JR., VANASKIE, SCIRICA
and VAN ANTWERPEN, *Circuit Judges*.

(Filed: August 19, 2013)

Thomas E. Moseley [ARGUED]
Suite 2600
One Gateway Center
Newark, NJ 07102-0000
        *Attorneys for Plaintiff-Appellant*

Bradley B. Banias
Timothy M. Belsan [ARGUED]
United States Department of Justice
Office of Immigration Litigation
Room 6417
P.O. Box 868
Ben Franklin Station
Washington, DC 20001

Michael Campion
Kristin L. Vassallo
Office of United States Attorney
970 Broad Street
Room 700
Newark, NJ 07102-0000
        *Attorneys for Defendant-Appellee*

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

2

Nizar Al-Sharif applied for United States citizenship, but his application was denied because he had been convicted of conspiracy to commit wire fraud, which the United States Citizenship and Immigration Services (USCIS) determined to be an aggravated felony. Al-Sharif contested the denial in the District Court, which entered summary judgment in favor of USCIS. In this appeal, Al-Sharif argues that he is entitled to citizenship because, under our decision in *Nugent v. Ashcroft*, 367 F.3d 162 (3d Cir. 2004), his conviction was not for an aggravated felony. After oral argument before a panel of this Court, we elected *sua sponte* to hear the case en banc in order to determine whether *Nugent* remains good law. For the reasons discussed below, we hold that it does not, and will affirm the judgment of the District Court.

## I

Al-Sharif is a lawful permanent resident of the United States. In 1992, he and others arranged to connect callers in Israel to callers in countries with no direct phone service to Israel, for a fee, by routing the calls through an apartment in New Jersey. Al-Sharif rented the apartment and set up phone service there using a false name and Social Security number. Afterwards, he abandoned the apartment without leaving a forwarding address or paying the phone bill.

As a result of this scheme, Al-Sharif pleaded guilty in 1993 to conspiracy to commit wire fraud in violation of 18 U.S.C. § 371, with a stipulation that his fraud caused a loss to the victim of between $120,000 and $200,000. He was sentenced to six months' home confinement and five years' probation, and was ordered to pay $128,838 in restitution to the phone company.

3

In 2004, Al-Sharif applied to become a naturalized citizen of the United States. On his application, he truthfully disclosed his conviction for conspiracy to commit wire fraud.[1] As a result, his application was denied by USCIS. In the view of USCIS, Al-Sharif's conviction was for an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(M)(i), which precluded him, under 8 U.S.C. § 1101(f)(8), from demonstrating "good moral character," as required for naturalization under 8 U.S.C. § 1427(a)(3). Al-Sharif sought review in the District Court, arguing that his conviction was not an "aggravated felony" for naturalization purposes. The District Court disagreed, and granted summary judgment to USCIS. Al-Sharif filed this timely appeal.

## II[2]

### A

Section 1101(a)(43) of Title 8 lists several categories of offenses that are considered "aggravated felon[ies]" for immigration purposes. In particular, § 1101(a)(43)(G) makes any "theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at

---

[1] In 2006, the Government charged Al-Sharif with deportability as a result of his conviction; however, an immigration judge granted Al-Sharif a waiver of deportation.

[2] The District Court had jurisdiction under 8 U.S.C. § 1421(c). We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's summary judgment de novo. *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 257 (3d Cir. 2012).

least one year" an aggravated felony, and § 1101(a)(43)(M)(i) makes any "offense" that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000" an aggravated felony.[3] Although some of these categories of aggravated felonies can overlap, each category is separate from the others, and a particular conviction may constitute an aggravated felony under multiple sections of § 1101(a)(43). *See Bobb v. Att'y Gen.*, 458 F.3d 213, 217–18 (3d Cir. 2006)

---

[3] We note that Al-Sharif was convicted of conspiracy, which is an aggravated felony under 8 U.S.C. § 1101(a)(43)(U). However, because § 1101(a)(43)(U) only applies to "an attempt or conspiracy to commit an offense described in this paragraph," we must review the underlying substantive offense to determine whether it is "an offense described in this paragraph." *See In re S-I-K-*, 24 I. & N. Dec. 324, 326 (BIA 2007) (requiring the government to prove that "at least one of the unlawful acts that was the object of the conspiracy was an offense" described in another paragraph of § 1101(a)(43)); *see also Nijhawan v. Att'y Gen.*, 523 F.3d 387, 399 (3d Cir. 2008) (looking to the underlying object of the conspiracy to determine if the alien committed an aggravated felony). Because the language of the statute and *In re S-I-K-* require an examination of the elements of the substantive offense when analyzing whether a conspiracy is an aggravated felony, USCIS correctly based its denial of Al-Sharif's naturalization application on § 1101(a)(43)(M)(i), which deals with fraud. This approach is in accord with that of many of our sister circuits. *See, e.g.*, *Conteh v. Gonzales*, 461 F.3d 45, 57 (1st Cir. 2006); *Kamagate v. Ashcroft*, 385 F.3d 144, 152–53 (2d Cir. 2004).

5

(explaining that forgery can be an aggravated felony under both § 1101(a)(43)(M)(i) and § 1101(a)(43)(R)).

In his plea agreement, Al-Sharif stipulated that his conspiracy to commit wire fraud caused a loss of more than $10,000. Nevertheless, he argues that *Nugent* dictates that he is not an aggravated felon because his offense was a hybrid theft/fraud offense and he was not sentenced to at least one year in prison.

In *Nugent*, an alien was convicted in Pennsylvania state court of theft by deception in violation of 18 Pa. Cons. Stat. § 3922 for passing a bad check worth $4,831, and was sentenced to a period of six to twenty-three months' imprisonment. 367 F.3d at 163, 169. We found that the alien's offense was both a "theft offense" as defined in § 1101(a)(43)(G), *id.* at 174, and an offense "involving fraud or deceit" as defined in § 1101(a)(43)(M)(i), *id.* at 177. As a result, we held that "to qualify as an aggravated felony under the INA [the alien's offense] must meet the requirements of Section 1101(a)(43)(M)(i), loss to the victim of more than $10,000, *in addition to* Section 1101(a)(43)(G), term of imprisonment of at least one year." *Id.* at 174–75 (emphasis added). This theory—that an alien convicted of an offense that is both a "theft offense" and an offense "involv[ing] fraud or deceit" is an aggravated felon only if he satisfies both the loss threshold of § 1101(a)(43)(M)(i) *and* the imprisonment threshold of § 1101(a)(43)(G)—has since become known as the "hybrid offense" theory. *See Bobb*, 458 F.3d at 215.

In the nine years since this Court adopted the hybrid offense theory in *Nugent*, we have never found another hybrid offense. *See Matter of Garcia-Madruga*, 24 I. & N. Dec. 436,

6

439 n.4 (BIA 2008).[4]  Rather, in *Bobb*, we declined to find that an offense that was both "relat[ed] to . . . forgery," as defined in § 1101(a)(43)(R), and "involve[d] fraud or deceit," as defined in § 1101(a)(43)(M)(i), was a hybrid offense.  458 F.3d at 226.  In doing so, we explicitly limited *Nugent* to "classificational schemes in which one classification is entirely a subset of another."  *Id.*  The hybrid offense theory, *Bobb* explained, could not apply to "separate universal classifications which intersect, but which have separate and independent elements."  *Id.*

While our holding in *Bobb* reaffirmed the basic premise of the hybrid offense theory, it raised a serious question about the theory's scope.  When read literally, *Bobb*'s statement that the hybrid offense theory is "restricted to classificational schemes in which one classification is entirely a subset of another" seems to suggest that the hybrid offense theory would not even apply to § 1101(a)(43)(G) and § 1101(a)(43)(M)(i) because the classification "theft offense" is not entirely a subset of "an offense . . . involv[ing] fraud or deceit."  This conclusion, and the rule that "no subsequent panel overrules the holding in a precedential opinion of a previous panel," *Covell v. Bell Sports, Inc.*, 651 F.3d 357,

---

[4] Other than *Bobb*, the only cases from our Circuit that discuss *Nugent*'s hybrid offense theory are a handful of not precedential opinions.  *See Familia v. Att'y Gen.*, 507 F. App'x 234, 238–39 (3d Cir. 2012); *Minaya v. Att'y Gen.*, 453 F. App'x 168, 173–74 (3d Cir. 2011); *Hatkewicz v. Att'y Gen.*, 350 F. App'x 667, 671 (3d Cir. 2009); *Mirat v. Att'y Gen.*, 184 F. App'x 153, 155–56 (3d Cir. 2006).  Each refused to extend the hybrid offense theory to the relevant statute of conviction.

363–64 (3d Cir. 2011) (quoting 3d Cir. I.O.P. 9.1), raised the question of what, exactly, remained of *Nugent* following *Bobb*.

Following *Bobb*, our Court has struggled with the applicability of the hybrid offense theory to fraud conspiracy cases, such as this one. Two panels of our Court issued not precedential opinions finding that fraud conspiracies were not hybrid offenses by analyzing the elements of the conspiracies, rather than the substantive fraud offenses. *See Familia v. Att'y Gen.*, 507 F. App'x 234, 238–39 (3d Cir. 2012); *Minaya v. Att'y Gen.*, 453 F. App'x 168, 173–74 (3d Cir. 2011).

In addition, no other court of appeals has adopted *Nugent*'s hybrid offense theory. Only a handful of published opinions from our sister Circuits have dealt with the hybrid offense theory. *See, e.g.*, *Magasouba v. Mukasey*, 543 F.3d 13, 15 (1st Cir. 2008); *Martinez v. Mukasey*, 519 F.3d 532, 539 (5th Cir. 2008); *Soliman v. Gonzales*, 419 F.3d 276, 280 (4th Cir. 2005). These Circuits have all avoided applying the theory by disposing of the cases on other grounds. *See Magasouba*, 543 F.3d at 15 ("*Nugent* has been restricted to classificational schemes in which one classification is entirely a subset of another. As previously mentioned, that is not the case here." (internal quotation marks and citation omitted)); *Martinez*, 519 F.3d at 539 ("Our court has not decided whether an offense may properly be characterized as a hybrid fraud/theft offense, which must meet the requirements of both subsections (G) and (M)(i)."); *Soliman*, 419 F.3d at 280 (4th Cir. 2005) ("Because we are able to resolve Soliman's petition for review by finding that Soliman's conviction was not for a theft offense under Subsection (G), we need not reach and address her alternative contention with respect to imputing Subsection (M)(i)'s minimum threshold requirement

8

to Subsection (G).").  For its part, the Board of Immigration Appeals (BIA) has declined to follow the hybrid offense theory.  *See Garcia-Madruga*, 24 I. & N. Dec. at 440 n.5 ("That [theft and fraud may be coextensive] does not mean, however, that we subscribe to the *Nugent* court's holding that in such an instance the elements *of both* aggravated felony branches must be demonstrated." (emphasis in original)).

The Supreme Court too has recently issued an opinion casting further doubt upon the hybrid offense theory.  In *Kawashima v. Holder*, 132 S. Ct. 1166 (2012), the Court stated that: "The language of [§ 1101(a)(43)(M)(i)] is clear. *Anyone* who is convicted of an offense that 'involves fraud or deceit in which the loss to the victim or victims exceeds $10,000' has committed an aggravated felony."  *Id.* at 1173 (emphasis added).  Read literally, this statement conflicts with *Nugent*, as the hybrid offense theory leaves open the possibility that someone convicted of an offense "involv[ing] fraud or deceit in which the loss to the victim or victims exceeds $10,000" has not committed an aggravated felony. This is exactly what Al-Sharif argues here: that, although his offense falls within the definition of § 1101(a)(43)(M)(i), it is not an aggravated felony because it is also a "theft offense" that did not result in at least one year of imprisonment.

Mindful of this history, we now overrule *Nugent*'s hybrid offense theory because it has been rejected by other courts and conflicts with the plain language of the statute.

B

We do not overturn our precedents lightly. "[P]recedent is to be respected unless the most convincing of reasons demonstrates that adherence to it puts us on a course

9

that is sure error." *Citizens United v. FEC*, 558 U.S. 310, 362 (2010). However, *stare decisis* "is not an inexorable command." *Payne v. Tennessee*, 501 U.S. 808, 828 (1991). "[W]hen governing decisions are unworkable," they may be overturned. *Id.* at 827. This is particularly true "if the precedent is particularly recent and has not generated any serious reliance interests," *Morrow v. Balaski*, --- F.3d ----, 2013 WL 2466892, at *16 (3d Cir. Jun. 14, 2013) (en banc) (Smith, J., concurring), or if the precedent has "sustained serious erosion from our recent decisions," *Lawrence v. Texas*, 539 U.S. 558, 576 (2003).

Here, the hybrid offense theory "has not generated any serious reliance interests." In the nine years since we have adopted it, it has been applied by no Court of Appeals, including our own. Rather, it has "sustained serious erosion from . . . recent decisions." We have greatly limited its applicability, *see Bobb*, 458 F.3d at 226, the BIA has declined to follow it, *see Garcia-Madruga*, 24 I. & N. Dec. at 440 n.5, and the Supreme Court's dicta in *Kawashima* has cast substantial doubt upon it. *See IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 311 (3d Cir. 2006) ("[W]e pay due homage to the Supreme Court's well-considered dicta as [lighthouses] that guide our rulings.").

On its merits, the hybrid offense theory cannot easily be reconciled with the text of the statute. "[W]hen [a] statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Sebelius v. Cloer*, 133 S. Ct. 1886, 1896 (2013). The language of § 1101(a)(43) is plain. Each of its subparagraphs lays out a separate aggravated felony and there is no indication in the statute that an offense must satisfy multiple subparagraphs in

order to be an aggravated felony. Thus, an offense that "involves fraud or deceit in which the loss to the victim exceeds $10,000" is an aggravated felony under § 1101(a)(43)(M)(i) regardless of whether it also meets the requirements of some other subparagraph. As the Supreme Court recently emphasized in *Kawashima*: "The language of [§ 1101(a)(43)(M)(i)] is clear. *Anyone* who is convicted of an offense that 'involves fraud or deceit in which the loss to the victim or victims exceeds $10,000' has committed an aggravated felony . . . ." 132 S. Ct. at 1173 (emphasis added). The hybrid offense theory conflicts with the Supreme Court's textual interpretation insofar as it implies that at least some fraud offenses with losses exceeding $10,000—namely, those that are also theft offenses and for which the offender was not sentenced to at least a year of imprisonment—are not aggravated felonies.[5] Therefore, we now overrule that theory.

Having held that *Nugent* is no longer the law of this Circuit, we hold that Al-Sharif was properly deemed an aggravated felon under § 1101(a)(43)(M)(i). Wire fraud is clearly an offense "involv[ing] fraud or deceit," *see Doe v. Att'y Gen.*, 659 F.3d 266, 274–75 (3d Cir. 2011), and Al-Sharif's plea agreement stipulated that he caused a loss of between $120,000 and $200,000—well in excess of the $10,000 threshold for a fraud to be considered an aggravated felony. Thus, Al-Sharif's offense was an aggravated felony

---

[5] We also note that, under the hybrid offense theory, a defendant who is convicted of an offense that is both theft and fraud receives more favorable treatment than a defendant who is convicted of either theft or fraud alone. This incongruity reinforces further our holding that the hybrid offense theory is inconsistent with the statute.

and the District Court properly entered summary judgment in favor of USCIS.

## III

Al-Sharif raises two additional arguments, but neither is persuasive. First, he argues that the 1996 aggravated felony definitions, which reduced the loss threshold at which fraud becomes an aggravated felony, do not apply to him. We rejected a nearly identical argument in *Biskupski v. Attorney General*, 503 F.3d 274 (3d Cir. 2007), where we held that the 1996 aggravated felony definitions applied retroactively to crimes committed before 1996, so long as the "orders or decisions of the [immigration judge] or BIA which apply the 'aggravated felony' definitions" were issued after the 1996 amendments. *Id.* at 283. Here, USCIS denied Al-Sharif's naturalization application in 2009, long after the 1996 amendments took effect. Although USCIS and not an immigration judge or the BIA was making that determination, our reasoning in *Biskupski* still applies because, until USCIS issued a final decision, Al-Sharif "remain[ed] the subject of administrative adjudication and ha[d] not established any right to the benefit he [wa]s seeking to obtain by his application." *Id.* (internal quotation mark and alteration omitted).

Second, Al-Sharif argues that the rule of lenity, which requires courts to "constru[e] any lingering ambiguities in deportation statutes in favor of the alien," *see INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987), applies to him. However, 8 U.S.C. § 1101(a)(43) is unambiguous. Section 1101(a)(43)(M)(i) is clear that an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000" is an aggravated felony. Therefore, Al-Sharif is not

entitled to relief under the rule of lenity. *See Kawashima*, 132 S. Ct. at 1175–76 (declining to apply rule of lenity because § 1101(a)(43)(M) was "clear enough"); *Muscarello v. United States*, 524 U.S. 125, 138–39 (1998) (rule of lenity only applies if there is a "grievous ambiguity or uncertainty in the statute").

## IV

For the foregoing reasons, we hold that the hybrid offense theory of *Nugent* no longer remains good law and the District Court did not err when it held that Al-Sharif was not entitled to citizenship by virtue of his 1993 conviction for conspiracy to commit wire fraud. Accordingly, we will affirm the judgment of the District Court.