ROTH, Circuit Judge, dissenting. Were we writing on a blank slate, it would be within the prerogative of the Majority to decide this case as it does. But the slate is not blank. The precise question that we examine here, whether NJ Transit is an “arm of the state” entitled to Eleventh Amendment sovereign immunity,” we have already fully considered and resolved en banc in Fitchik, v. N.J. Transit Rail Operations, Inc.[1] Little has changed since we decided this question. Thus, stare deci-sis, principles of estoppel, and our own Internal Operating Procedures all require that we decline the invitation to overrule Fitchik. For this reason, I respectfully dissent from Part III of the majority opinion. I. The doctrine of stare decisis is simple: Like cases should be decided alike. We should not overturn our precedential opinions absent special justification. Adherence to stare decisis thereby “permits society to presume that bedrock principles are founded in the law rather than in the proclivities of individuals[.]”[2] Our effort to maintain a consistent and reliable body of jurisprudence is memorialized in our Internal Operating Procedures (I.O.P.), which state explicitly that “it is the tradition of this court that the holding of a panel in a precedential opinions is binding on subsequent panels.”[3] En banc consideration by the full Court is required to overrule a prior precedential opinion.[4] To be sure, there are exceptions to this rule. As the Majority notes, we may—even without the blessing of an en banc majority—depart from a precedential opinion when its holding is in conflict with intervening Supreme Court authority.[5] My colleagues permit New Jersey Transit and the Transit officers to wriggle through this loophole. They suggest that Fitchik is no longer binding in light of the Supreme Court’s intervening decision in Regents of the University of California. The Majority then concludes that changes in the legal underpinnings of Fitchik justify overruling it. I disagree with both holdings. A. Intervening Legal Changes Do Not Require Fitchik’s Overruling Fitchik explains the analytical framework that we use to determine whether a state entity, such as NJ Transit, is “an arm of the state,” entitled to Eleventh Amendment immunity. Fitchik instructs us to employ a fact-intensive, three-factor balancing test. We consider the funding factor, the status under state law factor, and the autonomy factor.[6] After making an individual determination as to whether each factor supports a finding for or against immunity, we balance them to decide whether an entity is an arm of the state.[7] After a thorough review of the facts as they pertain to each factor, the Fitchik Court held that NJ Transit is “not the alter ego of New Jersey [and] is not entitled to eleventh amendment immunity.”[8] Fitchik treats the funding factor as the most important.[9] We recently explained, however, that “[wjhile our jurisprudence had long afforded the first factor—state funding—more weight than the others, we recalibrated the factors in light of the Supreme Court’s observation in Regents of the University of California v. Doe that an Eleventh Amendment inquiry should not be a ‘formalistic question of ultimate financial liability.’ ”[10] Thus, “[w]e now treat all three Fitchik factors as ‘co-equals,’ with the funding factor breaking the tie in a close case.”[11] Even though Fitchik explicitly acknowledges that no single factor is determinative in its evaluation, the Majority believes that its treatment of the funding factor as the most important warrants a complete overruling of the opinion. But in Fitchik, we engaged in a qualitative assessment of each factor; we explicitly considered the degree to which each factor counseled in favor of or against immunity. Based on the record that was before us—which is largely unchanged today—we held that NJ Transit is not entitled to immunity because the funding factor “provides extremely strong indication that NJT is not the alter ego of New Jersey” while “[t]he other factors—NJT’s treatment under state law, and its degree of autonomy—provide only weak support for the conclusion that NJT is New Jersey’s alter ego.”[12] Thus, Fitchik established that a showing of one factor can be strong enough to outweigh two factors that make weaker showings for the opposite outcome. Central to this holding was the idea that the strength of each factor must be qualitatively weighed. Neither the Supreme Court’s Regents of the University of California decision nor Benny. First Judicial Dist. of Pa.’s pronouncement that the factors are now “coequal” [13] undercuts this aspect of Fitchik. The Majority believes that Regents of the University of California requires courts to count the factors that favor or disfavor immunity, however slightly, and simply rule on the side of where two of the three factors lie. The “holistic analysis” compelled by Regents of the University of California does not require this formalistic approach, and our subsequent cases—including Benn—do not either. Benn, which explicitly. considered Regents of the University of California, established only that no single Fitchik factor is “predominant” in our analysis.[14] Our cases have since understood. that no ¡factor is entitled to presumptive weight, and no factor is independently dispositive. This approach does not preclude Fitchik’s qualitative method, and we have not understood it. to have done so. The qualitative strength of each factor has consistently guided our analysis. Fe-bres v. Camden Board of Education[15] is demonstrative. There we found that the autonomy factor “slightly favor[ed]” immunity while the other two factors—funding and status—counseled against immunity.[16] Ultimately, we declined to recognize any immunity.[17] In Cooper v. Southeastern Pennsylvania Transit Authority, we again declined to recognize Eleventh Amendment immunity because, unlike the state status factor—which weighed “slightly” in favor of immunity—the autonomy and state funding factors together weighed “slightly” against a finding of immunity.[18] Our cbnsideration in Bowers v. National Collegiate Athletic Association also explicitly considered the qualitative strength of each Fitchik factor.[19] There we concluded that the university was an ami of the state because the state-treasury factor weighed only “slightly” against immunity and the status ’ and autonomy factors weighed “heavily” in favor of it.[20] As demonstrated, the cases w¿ have decided'after Regents of the University of California and Benn do not merely rely on a mechanical counting of the factors. Instead, they explicitly assess the degree .to which each factor makes a showing. That is because Fitchik requires—and Regents of the University of California permits—us to do so.' The fact that in cases such- as Febres, Cooper, and Bowers, our assessment of the factors has declined to recognize immunity when at least two Fitchik factors' have cautioned against such a finding does not change our conclusion. Our post-Regents of the University of California cases have not considered a situation like the one we confronted in Fitchik—where one factor provides “extremely strong” support for one conclusion while the other two factors provide only “weak” support for the opposite outcome. Thus, those decisions are distinguishable and do not necessarily conflict with Fitchik. As a result, I do not believe that the circumstances here rise to the kind of exceptional circumstances we ordinarily require to warrant a departure from a precedential opinion absent en banc consideration. Fitchik can and should be read harmoniously with Regents of the University of California and our subsequent opinions. Only an en bane majority of our Court should decide whether the “strong indication” compelled by New Jersey Transit’s funding can be overcome by the “weak support” of the “state law” and “autonomy” factors. The Majority, however, fears that our continued application of Fitchik could generate “a potentially fractured body of jurisprudence.”[21] Indeed, when two of our decisions are inconsistent, one of them must yield. But as I have explained, there is no inconsistency here. And even if there were, overruling Fitchik would be the improper course. We have “long held that if [this Circuit’s] cases conflict, the earlier is the controlling authority and the latter is ineffective as precedents,”[22] In light of Fitchik’s continuing validity, it remains the opinion that governs because it. came first. So, to the extent that our post-Fitch-ik precedents are inconsistent with Fitchik in ways not required by Regents of the University of California, they are without effect.[23] Fitchik remains the controlling authority and, as a result, this panel is foreclosed from reconsidering the question re-presented here. B. The Circumstances Have Not Changed So Significantly That Our Reexamination Is Required Our Court has long recognized that principles of estoppel permit a litigant who was not a party to a prior judgment to use that judgment to prevent a defendant from re-litigating issues resolved in the earlier proceeding.[24] Relying on this recognition, Karns and Parker argue that NJ Transit is collaterally estopped from' claiming that it is an arm of the state because Fitchik conclusively rejected that argument. They are right. The Majority, however, believes that our reconsideration is appropriate because legal developments over the past twenty-seven years have changed the weighing of the factors upon which Fitchik was based.[25] In its view, a re-balancing of the factors in light of these alleged new circumstances clearly weighs in favor of sovereign immunity. I disagree because the circumstances have remained largely unchanged.[26] Fitchik held that the first factor— “whether the judgment would be paid by state funds—provides an extremely strong indication that NJT is not the alter ego of New Jersey.”[27] As the Majority observes, 'NJ Transit has “not offered updated financial information to undermine this assessment.”[28] Thus, for the reasons my colleagues note, this factor continues to “provide[] extremely strong indication” that NJ Transit is not the entitled to Eleventh Amendment immunity.[29] The second Fitchik factor requires us to consider “[t]he status of the agency under state law ....”[30] In Fitchik, we held that this factor “tilt[s] in favor of [the transit authority’s] contention that [NJ Transit Rail Operations] is entitled to sovereign immunity, but only slightly.”[31] The Majority contends that “in the intervening years since our decision in Fitchik, it has become apparent that the state law factor weighs heavily in favor of a finding of immunity.” [32]1 disagree. My colleagues conclude that the state law factor now favors a finding of immunity because NJ Transit is statutorily constituted as an instrumentality of the State, constitutionally allocated within the Department of Transportation, vested with the authority to exercise police powers, considered state property under state tax laws, designated as an “alter ego of the State” by a state’s trial and intermediate level courts, subject to the Administrative Procedures Act, and has the power of eminent domain.[33] This evidence might be more compelling had our Court not considered it when NJ Transit first raised its immunity defense in Fitchik. We explicitly recognized that “[t]here is some indication that New Jersey law considers [NJ Transit] to be an arm of the state,”[34] noting that [NJ Transit] is subject to New Jersey Tort Claims Act; is immune from state property tax; has the power of eminent domain; and is subject to the strictures of the state administrative procedure act. Further, the New Jersey Supreme Court has declared [NJ Transit] to be a “public” entity, although not in the context of sovereign immunity.[35] Thus, NJ Transit’s allocation under the state constitution and the fact that it possesses official police powers are the only facts set forth here that we did not explicitly consider in Fitchik. I doubt that these facts are so significant that they warrant a new determination by this panel. NJ Transit offers the fact of the constitution’s treatment of the transit body to show that New Jersey deems it an instrumentality of the State exercising essential governmental functions. But Fitchik fully appreciated that, under state law, NJ Transit seems to be an arm of the state.[36] That fact, however, was not conclusive.[37] I also doubt that the grant of official police powers to NJ Transit alone requires a change in our Fitchik holding.[38] In light of the foregoing, I cannot conclude that NJ Transit has presented new evidence requiring us to hold that the second Fitchik factor now “strongly favors a finding of immunity.”[39] Under the third factor, we consider the degree of autonomy the entity has from the State.[40] Weighing the pertinent facts— which have not since changed in any meaningful way—the Fitchik Court concluded that although NJ Transit is “significantly autonomous,” the final Fitchik factor “counsels slightly in favor of according immunity.” [41] That is principally because “the degree of control by the governor is fairly substantial ....”[42] The Majority’s “consideration of this factor is largely in accord,” and thus does not suggest that new circumstances with respect to this factor warrant our reexamination.[43] NJ Transit suggests that there are additional considerations that compel us to conclude that the factor here “weighs heavily in finding immunity.”[44] Their argument is based on the fact that (1) NJ Transit’s board must present its annual budget to the governor and legislature, (2) the New Jersey governor appoints the entire board, and (3) the transit system’s acquisition of privately owned transportation entities are subject to legislative veto. These arguments were all made in Fitchik’s dissenting opinion.[45] Because the Fitchik majority considered them and remained unpersuaded, we are bound by its conclusion. Accordingly, this factor continues to only “counsel slightly in favor of according immunity to NJT” in light of Fitchik.[46] As demonstrated, NJ Transit’s funding scheme, status under state law, and organizational structure have remained largely unchanged over the last twenty-seven years. NJ Transit’s arguments here were fully considered and resolved in Fitchik-, as a result, principles of collateral estoppel preclude NJ Transit from relitigating them here. II. In light of the principles underlying the doctrines of stare decisis and collateral estoppel, it has been the tradition of this court to refrain from overturning our precedents “lightly.”[47] Today we depart from that tradition. Because I believe we do so unjustifiably* I respectfully dissent. . 873 F.2d 655 (3d Cir. 1989) (en banc). . United States v. Babich, 785 F.2d 415, 417 (3d Cir. 1986) (quoting Vasquez v. Hillery, 474 U.S. 254, 266, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986)); see also Payne v. Tennessee, 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) ("Stare decisis'is the preferred course because it promotes- the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.”). . 3d Cir. I.O.P. 9.1 (2015). . 3d Cir. I.O.P. 9.1. . See Maj. Op. 513-14; Mennen Co. v. Atl. Mut. Ins. Co., 147 F.3d 287, 294 n.9 (3d Cir. 1998). . Maliandi v. Montclair State Univ., 845 F.3d 77, 83 (3d Cir. 2016). . Id. at 84 (citing Fitchik, 873 F.2d at 664). . Fitchik, 873 F.2d at 664. . Id. at 659-60. . Maliandi, 845 F.3d at 84 (internal citations omitted). . Id. (internal citations omitted). . Fitchik, 873 F.2d at 664. . Benn v. First Judicial Dist. of Pa., 426 F.3d 233, 240 (3d Cir. 2005). . Cooper v. Se. PA Transp. Auth., 548 F.3d 296, 301 (3d Cir. 2008) (citing Benn, 426 F.3d at 240). . 445 F.3d 227 (3d Cir. 2006). . Id. at 232, 237 (emphasis added). . Id. at 237. . 548 F.3d 296, 311 (3d Cir. 2008). . 475 F.3d 524, 549-50 (3d Cir. 2007), amended on reh'g (Mar. 8, 2007). . Id. . Maj. Op. 515. . Pardini v. Allegheny Intermediate Unit, 524 F.3d 419, 426 (3d Cir. 2008) (internal quotation marks and citation omitted); see also United States v. Tann, 577 F.3d 533, 541 (3d Cir. 2009) (“In the unique circumstance when our panel decisions conflict and our Court has not spoken en banc, .. .the earlier decision is generally the controlling authority.” (citation omitted)) . Holland v. N.J. Dep't of Corrections, 246 F.3d 267, 278 n.8 (3d Cir. 2001) ("[T]o the extent that [a case within the circuit] is read to be inconsistent with earlier case law, the earlier case law .,. controls.”); O. Hommel Co. v. Ferro Corp., 659 F.2d 340, 354 (3d Cir. 1981) ’(“[A] panel of this court cannot overrule a prior panel precedent. To the extent, that [the later case] is inconsistent with [the earlier case, the later case] must be deemed without effect.” (internal citation omitted)). . Burlington N. R.R. Co. v. Hyundai Merch. Marine Co., 63 F.3d 1227, 1232 (3d Cir. 1995) (citation omitted). . Resp’t's Br, 19; Maj. Op. 517 (contending that "[i]n the twenty-seven years since our Court's decision in Fitchik,... it has become much more apparent that New Jersey law regards NJ Transit as an arm of the state,”). . In addition, as we state in Part A above, the strength of each of the factors found in Fitchik was weighed qualitatively, a procedure which is consistent with the approach of the Court in Regents of the University of California. . Fitchik, 873 F.2d at 664. . Maj. Op. at 515. . Fitchik, 873 F.2d at 664. . Id. at 663. . Id. (emphasis acjded). . Maj. Op. 519. . Maj. Op. 515-17. . Fitchik, 873 F.2d at 662. . Id. at 662-663 (citations omitted). . Id. at 662 ("There is some indication that New Jersey law considers [NJ Transit] to fae an arm of the state.”). . Id. at 663 ("On the other side of the equation, New Jersey has given power to NJT in two spheres that Urbano identified as indicative that an agency is not entitled to sovereign immunity.”). . NJ Transit does not suggest that its enforcement officers did not have general police authority at the time Fitchik was decided. Indeed, the statutory provision granting New Jersey Transit officers general police powers appears to have been passed in 1989, well before Fitchik. . Maj. Op. 518. . Fitchik, 873 F.2d at 659. . Id. at 664. . Id. . Maj. Op. 517. . Resp’t’s Br. 27. . Fitchik, 873 F.2d at 667-68 (Rosenn, J., dissenting) . Id. at 664. . Al-Sharif v. U.S. Citizenship & Immigration Servs., 734 F.3d 207, 212 (3d Cir. 2013).