**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-3640

_____

K.A.,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF
AMERICA

_____

On Petition for Review of an
Order of the Board of Immigration Appeals
(A077-026-013)
Immigration Judge: Margaret Reichenberg

_____

Argued: January 14, 2020

Before: HARDIMAN, PORTER, and PHIPPS,
*Circuit Judges*.

(Filed: May 4, 2021)

_____

Miguel A. Estrada
Matthew S. Rozen                    **[Argued]**
GIBSON DUNN & CRUTCHER
1050 Connecticut Avenue, N.W.
Washington, DC 20036

    *Counsel for K.A.*

Allison Frayer                      **[Argued]**
Anthony J. Messuri
UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF IMMIGRATION LITIGATION
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

    *Counsel for the Attorney General of the United States*
    *of America*

_____

OPINION OF THE COURT
_____

PHIPPS, *Circuit Judge*.

This petition to review a motion to reopen decade-old immigration proceedings turns on a single legal issue: whether a conviction from 2000 for second-degree New Jersey robbery, *see* N.J. Stat. Ann. § 2C:15-1, constitutes an aggravated felony "theft offense" under the Immigration and Nationality Act, as amended, *see* 8 U.S.C. § 1101(a)(43)(G). It does. From that conclusion, everything else falls into place. An aggravated felony theft offense constitutes a "particularly serious crime."

2

*Id.* §§ 1158(b)(2)(B)(i), 1231(b)(3)(B). And commission of such a crime disqualifies an alien from seeking asylum. *See id.* § 1158(b)(2)(A)(ii). Similarly, a conviction for a particularly serious crime coupled with a prison sentence of at least five years, which petitioner received, bars withholding of removal. *See id.* § 1231(b)(3)(B)(ii). Because asylum and withholding are the only forms of relief sought in this case, we will deny the petition.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 1994, K.A., a citizen of Nigeria, entered the United States without admission or parole. He settled in New Jersey, and in 1997, he married a woman who was a United States citizen. He also began to commit a series of crimes. Those offenses included second-degree robbery under N.J. Stat. Ann. § 2C:15-1 and third-degree possession with intent to distribute a controlled substance within 1,000 feet of a school under N.J. Stat. Ann. § 2C:35-7. For the robbery, K.A. received a sentence of ten years, and for the drug crime, five years. Those sentences ran concurrently, and K.A. was incarcerated from 2002 until his parole in 2008.

K.A.'s release from custody would only be temporary, as incarceration became the norm for him over the next decade. Shortly after his parole, in August 2008, the U.S. Department of Homeland Security ("DHS") detained K.A. after it commenced removal proceedings against him. In 2010, however, while those proceedings were ongoing, K.A. was released on bond and began a relationship with a woman who was not his wife. After they were together for almost a year, in April 2011, K.A. was pulled over for driving under the influence in a car rented in her name. A search of that car

3

revealed potential evidence of fraud, and a federal grand jury in New Jersey later indicted K.A. on multiple counts of using inmates' personal information to submit fraudulent tax returns and receive tax refunds. As a result, K.A. began criminal pretrial detention in April 2011.

During that time, his immigration proceedings ran their course. K.A. conceded removability, but still sought asylum, withholding of removal, and relief under the Convention Against Torture. He premised those requests for relief on Decree 33, a Nigerian law that authorized prosecutions for drug convictions abroad. The Immigration Judge initially found K.A. ineligible for asylum and withholding due to his drug conviction but granted him CAT deferral. After DHS administratively appealed that decision (K.A. did not appeal), the BIA found error with the CAT deferral analysis and remanded that issue. On remand, the Immigration Judge denied CAT deferral. K.A. administratively appealed that decision but to no avail. The BIA affirmed that ruling and issued a final order of removal. This Court denied K.A.'s subsequent petition for review of that final order.

Although he remained in criminal pretrial custody throughout those removal proceedings, several other developments occurred. In 2014, Nigeria enacted the Same Sex Marriage (Prohibition) Act. That law criminalized same-sex marriage, same-sex cohabitation as sexual partners, as well as other conduct, such as public displays of same-sex affection. Also in 2014, K.A. began a sexual relationship with his male cellmate, and the two had over fifteen sexual encounters until the cellmate's release in mid-2015. More than a year later, in December 2016, and after he had been in criminal pretrial detention going on six years, K.A. realized that he had "always

4

felt attracted to men" and that his "identity as a bisexual man [was] permanent." Affidavit of K.A. (AR156).

Soon after, on January 25, 2017, the federal district court in New Jersey dismissed K.A.'s criminal charges for lack of a speedy trial. K.A. was then transferred from criminal custody to immigration custody pending his removal, which was scheduled for August 2017. But he never boarded his return flight.

Shortly before his scheduled departure, on July 28, 2017, K.A. filed a motion with the BIA to reopen his immigration proceedings. In that motion, K.A. sought asylum and withholding of removal. He premised those requests on changed country conditions in Nigeria (the Same Sex Marriage (Prohibition) Act) coupled with his changed personal circumstances (bisexuality). Specifically, he asserted that under intervening Supreme Court decisions – *Moncrieffe v. Holder*, 569 U.S. 184 (2013), and *Mathis v. United States*, 136 S. Ct. 2243 (2016) – his prior New Jersey drug conviction no longer qualified as an aggravated felony (and thus it was not a particularly serious crime). Without that designation, K.A. argued that he was eligible for asylum and withholding. K.A. also presented other arguments, including that his circumstances were exceptional enough that the BIA should *sua sponte* reopen his proceedings. Through a supplemental filing, K.A. requested CAT protection due to his expressed fear that he "would be subjected to harassment and torture due to the unfavorable opinion Nigerians hold toward members of the LGBT community." Form I-589 at 5 (Aug. 15, 2017) (AR51).

The pendency of K.A.'s motion to reopen did not automatically stay his removal. He was transported to Arizona

5

for a chartered flight to Nigeria, and while there, shortly before his scheduled deportation, he moved to stay his removal for the pendency of his motion to reopen. The BIA denied his request. K.A. then petitioned for review in both the Third and Ninth Circuits. Before this Court denied his request, the Ninth Circuit issued a temporary stay of removal pending a decision on the stay motion. That court eventually dismissed the petition for lack of jurisdiction and vacated the temporary stay, but only after K.A. had returned to immigration custody in New Jersey instead of boarding the flight to Nigeria.

Almost three months later, the BIA denied K.A.'s motion to reopen. In that decision, the BIA first determined that K.A. was ineligible for asylum and withholding. But rather than assessing whether K.A.'s drug conviction remained a particularly serious crime under intervening Supreme Court precedent, the BIA instead examined the significance of K.A.'s second-degree robbery conviction. And relying on a non-precedential opinion, the BIA determined that second-degree robbery in New Jersey "'clearly constitutes an aggravated felony' theft offense." BIA Decision at 1 (Nov. 22, 2017) (AR3) (parenthetically quoting *Briolo v. Att'y Gen.*, 515 F. App'x 126, 128 n.3 (3d Cir. 2013)). Because an aggravated felony theft offense is a particularly serious crime, *see* 8 U.S.C. §§ 1158(b)(2)(B)(i), 1231(b)(3)(B), the BIA concluded that K.A. was ineligible for asylum or withholding. As for K.A.'s request for CAT protection, the BIA determined that the motion was untimely on the theory that K.A. did not demonstrate material changes in country conditions. (That conclusion, if correct, would justify the BIA's denial of K.A.'s entire motion to reopen.) The BIA closed its decision with two summary statements: (i) that K.A. did not make a *prima facie* showing of eligibility for any of the relief he requested, and

6

(ii) that K.A. did not establish an exceptional circumstance warranting *sua sponte* reopening.

K.A. timely petitioned for review of the BIA's order while in immigration detention, bringing the matter within this Court's jurisdiction. *See* 8 U.S.C. § 1252(a)(1). K.A. also moved for a stay of removal, and this Court granted that request.

In his briefs, K.A. challenges four aspects of the BIA's order denying his motion to reopen. First, he argues that his robbery conviction is not an aggravated felony theft offense – a conclusion that would render him eligible for asylum and withholding. Second, he disputes the BIA's assessment that the treatment of LGBT persons in Nigeria had not materially changed. From there, K.A. asserts that he demonstrated a *prima facie* case for asylum and withholding of removal – but he does not make such an argument for CAT deferral. Finally, he contends that the BIA erred in declining to *sua sponte* reopen his proceedings. After he submitted his opening brief, K.A. was released on bond from immigration detention.

## II. DISCUSSION

Through his petition, K.A. seeks to vacate the BIA's denial of his motion to reopen so that he can pursue asylum and withholding of removal on remand. But if he is ineligible for those forms of relief, then his petition cannot succeed. He must therefore prevail on his first argument – that his second-degree robbery conviction does not disqualify him from asylum and withholding. However, on *de novo* review, *see Ng v. Att'y Gen.*, 436 F.3d 392, 395 (3d Cir. 2006), K.A.'s robbery conviction constitutes an aggravated felony. And under the

7

circumstances, that bars him from both asylum and withholding of removal. Because K.A. does not attempt to make a *prima facie* case for any other form of relief, such as CAT deferral, his petition therefore fails.

## A. The Federal Generic Theft Offense

In removal proceedings, an alien who has committed a statutorily identified "aggravated felony," *see* 8 U.S.C. § 1101(a)(43), is ineligible for certain forms of relief. *See Singh v. Att'y Gen.*, 839 F.3d 273, 278 (3d Cir. 2016). Because aggravated felonies constitute particularly serious crimes, *see* 8 U.S.C. §§ 1158(b)(2)(B)(i), 1231(b)(3)(B), a conviction for such an offense disqualifies the alien from asylum. *See id.* § 1158(b)(2)(A)(ii). Similarly, an aggravated felony that results in a sentence of at least five years bars the alien from seeking withholding of removal under both the INA and the CAT. *See id.* § 1231(b)(3)(B)(ii); 8 C.F.R. § 1208.16(d)(2).

As amended, the INA identifies various offenses as aggravated felonies. One of those is a "theft offense":

> The term "aggravated felony" means . . . a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year[.]

8 U.S.C. § 1101(a)(43)(G); *see also* Immigration and Nationality Technical Corrections Act of 1994, Pub. L. No. 103-416, sec. 222(a), 108 Stat. 4305, 4321 (adding "theft offense (including receipt of stolen property)" to the list of aggravated felonies). Unlike some other aggravated felonies, "theft offense" does not contain language limiting its scope by

8

"refer[ence] to the specific circumstances in which [the] crime was committed." *Nijhawan v. Holder*, 557 U.S. 29, 38 (2009); *see, e.g.*, 8 U.S.C. § 1101(a)(43)(K)(ii) (an offense "relating to transportation for the purpose of prostitution[] *if committed for commercial advantage*" (emphasis added)). Instead, due to its more abstract formulation, the term "theft offense" refers to a generic formulation of a theft offense, and not any specific theft crime. *See Moncrieffe*, 569 U.S. at 190, 198 (considering "generic" federal offenses "in the abstract"); *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 185 (2007) (finding aiding and abetting a "theft offense" to fall within the generic definition).

Consistent with that understanding, courts have developed a definition for a generic theft offense:

> [T]he taking of property or an exercise of control over property without consent with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent.

*Duenas-Alvarez*, 549 U.S. at 189 (quoting *Penuliar v. Gonzales*, 435 F.3d 961, 969 (9th Cir. 2006)); *see also Lewin v. Att'y Gen.*, 885 F.3d 165, 168 (3d Cir. 2018) (observing that this definition is "an accepted generic definition of a 'theft offense'"). As formulated, the generic theft offense consists of three elements: (i) the taking of property or an exercise of control over property; (ii) without consent; and (iii) with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent.

9

To date, this Circuit has not considered the precise contours of the second element – the without-consent requirement. And in this context, the term 'consent' is capable of multiple meanings. It may refer only to assent – the act of agreeing. *See, e.g.*, *Consent*, Webster's Third New International Dictionary (1993) (definition 1a: "compliance or approval esp. of what is done or proposed by another: acquiescence, permission"); *Consent*, The Random House Dictionary of the English Language (2d ed. 1987) ("permission, approval, or agreement; compliance; acquiescence"). But 'consent' may require more than the mere act of agreeing; it may also require that the assent be voluntary and intelligent. *See, e.g.*, *Consent*, Webster's Third New International Dictionary (1993) (definition 1b: "capable, deliberate, and voluntary agreement to or concurrence in some act or purpose implying physical and mental power and free action – distinguished from *assent*"). In articulating the generic theft offense, other circuits have used the first definition of 'consent' – consent as only assent. *See Soliman v. Gonzales*, 419 F.3d 276, 282–84 (4th Cir. 2005) (originating this theory); *see also, e.g.*, *Vassell v. Att'y Gen.*, 839 F.3d 1352, 1356–59 (11th Cir. 2016); *Carrillo-Jaime v. Holder*, 572 F.3d 747, 751–54 (9th Cir. 2009); *In re Garcia-Madruga*, 24 I. & N. Dec. 436, 439–41 (B.I.A. 2008). But for three reasons, the second definition of 'consent' – consent as voluntary and intelligent assent – better fits the definition of a generic theft offense.

First, statutory text favors the reading of 'consent' as voluntary and intelligent assent. By using the term "theft offense" – not merely 'theft' – in its itemization of aggravated felonies, *see* 8 U.S.C. § 1101(a)(43)(G), the INA includes conduct beyond 'theft'; it extends to a family of crimes related to theft. *See Hernandez-Mancilla v. INS*, 246 F.3d 1002,

10

1008–09 (7th Cir. 2001) (reading the term "theft offense" as "an umbrella label" that "encompasses a myriad of offenses"); *see also Nugent v. Ashcroft*, 367 F.3d 162, 174 (3d Cir. 2004) ("Congress used the words 'theft offense' rather than just 'theft,' thus indicating that the phrase ought be read to incorporate different but closely related constructions in modern state statutes." (parenthetically quoting *United States v. Corona-Sanchez*, 291 F.3d 1201, 1205 (9th Cir. 2002) (en banc))), *overruled on other grounds by Al-Sharif v. U.S. Citizenship & Immigr. Servs.*, 734 F.3d 207 (3d Cir. 2013) (en banc). Similarly, the INA expressly includes "receipt of stolen property," as a theft offense, signaling again that the term "theft offense" should not be limited to a narrow conception of theft. 8 U.S.C. § 1101(a)(43)(G). Also, in terms of impact, a construction of the without-consent element to mean 'without assent' would exclude a multitude of state-law theft crimes from the federal generic definition.[1] But significantly

---

[1] *See, e.g.*, *Lopez-Aguilar v. Barr*, 948 F.3d 1143, 1147–49 (9th Cir. 2020) (holding that third-degree Oregon robbery is not a theft offense because "a defendant could be convicted if she threatened force against a third party to compel that third party to convince a property owner, by deception, to give the property to the defendant consensually" or "if the taking was consensual (although deceptive), but force was used against a third party to prevent that person from retrieving the property right after it was received by the thief"); *Vassell*, 839 F.3d at 1359–61 (holding that Georgia theft by taking is not a theft offense because it does not "require any lack of consent on the part of the victim"); *Mena v. Lynch*, 820 F.3d 114, 118–20 (4th Cir. 2016) (holding that federal receipt of embezzled property is not a theft offense because "[b]y definition,

11

diminishing the volume of theft-related crimes included within the federal generic definition of "theft offense" is incompatible with the INA's use of the broad term "theft offense."

Second, the plain and ordinary meaning of 'theft' supports this construction of the without-consent element. At the time Congress amended the INA to include "theft offenses" as

---

embezzlement . . . involves property that came into the initial wrongdoer's hands *with* the owner's consent"); *Lopez-Valencia v. Lynch*, 798 F.3d 863, 868 (9th Cir. 2015) (holding that California theft is not a theft offense because it could be committed through theft by false pretenses); *Castillo v. Holder*, 776 F.3d 262, 268–70 (4th Cir. 2015) (holding that Virginia unauthorized use of a motor vehicle is not a theft offense because a conviction is possible for "a defendant's use of a vehicle in a manner not specifically authorized by its owner, even if such use is consistent with the owner's general policy regarding use, occurs during the period the vehicle is entrusted to the defendant, and results in no damage to the vehicle"); *Omargharib v. Holder*, 775 F.3d 192, 197 n.9 (4th Cir. 2014) (holding that Virginia grand larceny is not a theft offense because "under the generic federal definition of 'theft,' fraudulent takings do not constitute takings 'without consent'" (citation omitted)); *Carrillo-Jaime*, 572 F.3d at 750–54 (holding that, in California, owning or operating a premises where any person has engaged in destroying a car or car parts "known to be illegally obtained by theft, fraud, or conspiracy to defraud" is not a theft offense because the car or car parts could be obtained through theft by false pretenses, fraud in the inducement, or through similar conspiracies to defraud (citation omitted)).

aggravated felonies, the prevailing legal understanding of 'theft' described the offense as including the following:

> The taking of property *without the owner's consent* or from the possession of some person holding the same for him, with intent to deprive the owner of the value of the same, and to appropriate it to the use or benefit of the person taking.

*Theft*, Black's Law Dictionary (6th ed. 1990) (emphasis added). *See generally Wis. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2070 (2018) (observing that a court's "job is to interpret the words consistent with their 'ordinary meaning . . . at the time Congress enacted the statute'" (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979))). This definition of 'theft' continued, expressly including within the offense's scope "swindling; embezzlement; theft by deception; theft by threat or extortion; theft by false pretext; and theft of services." *Theft*, Black's Law Dictionary (6th ed. 1990). But some of those crimes could not be considered thefts if the without-consent element meant only 'without assent,' as opposed to 'without voluntary and intelligent assent.' Similarly, the Model Penal Code consolidated theft and related offenses into a single offense. *See* Model Penal Code § 223.1(1) (1962). In grouping together related theft offenses as thefts, the Model Penal Code specifically included categories of theft that could not be thefts if the without-consent element were read to mean only 'without assent.' Those include theft by unlawful taking or disposition; theft by deception; theft by extortion; theft of property lost, mislaid, or delivered by mistake; receiving stolen property; theft of services; theft by failure to make required disposition of funds received; and unauthorized use of

13

automobiles and other vehicles. *See id.* §§ 223.2–223.9. Thus, when Congress added the term "theft offense" to the INA's list of aggravated felonies, the comparatively narrower term, 'theft' was understood to include crimes that can be committed *only* without 'voluntary and intelligent assent.' That is telling, as it is implausible that without any indication in the statutory text, Congress intended for the comparatively broader term "theft offense" to exclude crimes that were generally understood to be 'thefts.'

Third, the historical evolution of theft crimes indicates that the without-consent element now means 'without voluntary and intelligent assent.' Theft originated from common-law larceny, which occurred "when one person misappropriated another's property by means of taking it from his possession without his consent." Wayne R. LaFave, 3 Substantive Criminal Law § 19.1(a) (3d ed. Oct. 2020 update). But over time, larceny by trick emerged as a common-law offense for obtaining possession of another's property through a lie, with the intention of, and succeeding in, misappropriating that property. *See id.* In the eighteenth century, the English Parliament established the related crime of false pretenses (and it later recognized embezzlement as well). *See id.* § 19.1(b). The Model Penal Code remained true to that tradition by defining consent to exclude instances in which assent alone was given. Those circumstances include legal incompetency, youth, mental disease, intoxication, improvident consent, and inducement "by force, duress or deception of a kind sought to be prevented by the law defining the offense." Model Penal Code § 2.11(3). Deeply engrained in Anglo-American jurisprudence is the principle that "an apparent consent is not effective unless, as a factual matter, it is voluntary and intelligent." Charles E. Torcia, 1 Wharton's Criminal Law

14

§ 46 (15th ed. Aug. 2020 update).  It would contravene that legal heritage to apply a different understanding of consent to the without-consent element of the federal generic theft offense.

Nor does anything in the INA's text or structure undermine this conclusion.  The INA does separately identify offenses involving "fraud or deceit" as aggravated felonies.  *See* 8 U.S.C. § 1101(a)(43)(M)(i); *see also, e.g.*, *Soliman*, 419 F.3d at 282–84 (relying, in part, on this distinction); *Vassell*, 839 F.3d at 1356–59 (same); *In re Garcia-Madruga*, 24 I. & N. Dec. at 439–41 (same).  And it may well be that fraud-or-deceit offenses under the INA require proof of a lack of voluntary-and-intelligent-assent.  But that does not mean that such an element applies *only to* fraud-or-deceit offenses.  Sitting *en banc*, this Court has recognized that the elements of multiple aggravated felonies can overlap.  *See Al-Sharif*, 734 F.3d at 210 ("Although some of these categories of aggravated felonies can overlap, each category is separate from the others, and a particular conviction may constitute an aggravated felony under multiple sections of [8 U.S.C.] § 1101(a)(43).").  Specifically, the elements of the "theft offense" and the "fraud or deceit" aggravated felonies do overlap.  *See id.* at 210–12.  The same is also true for other aggravated-felony pairs.  *See, e.g.*, *Bobb v. Att'y Gen.*, 458 F.3d 213, 217–19 (3d Cir. 2006) (explaining that forgery can be an aggravated felony as either an "fraud or deceit" offense under § 1101(a)(43)(M)(i) or a "forgery" offense under § 1101(a)(43)(R)).  Thus, even supposing that fraud-or-deceit offenses require a lack of voluntary and intelligent assent, that would not preclude theft offenses from having the same element.

15

For these reasons, the term 'consent' as used in the federal generic definition of "theft offense" means 'voluntary and intelligent assent,' not merely 'assent.' This understanding embraces the full family of theft-related crimes – an outcome that is more consistent with the statutory text, the plain and ordinary meaning of the term 'theft,' and the historical legal conception of consent.

## B.    The Categorical Approach

The federal generic definition of theft offense establishes the universe of state-law crimes that qualify as "theft offenses" under the INA.  *See* 8 U.S.C. § 1101(a)(43)(G).  For a state-law crime to fit within the federal generic definition, the minimum conduct criminalized by the state-law offense must categorically match the federal generic definition for that crime.  *See Moncrieffe*, 569 U.S. at 190; *Rosa v. Att'y Gen.*, 950 F.3d 67, 73 (3d Cir. 2020).  To satisfy that requirement, the minimum proof required for the state offense must satisfy each element of the federal generic definition.  *See Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562, 1568 (2017).  Making that determination under the so-called categorical approach requires a comparison between the elements of the state-law crime and those of the generic federal offense; the individual facts associated with the state-law offense committed by the defendant are immaterial.  *See Mathis*, 136 S. Ct. at 2248.[2]

---

[2] For certain offenses, specifically those that "list elements in the alternative, and thereby define multiple crimes," *Mathis*, 136 S. Ct. at 2249, courts may "consult a limited class of documents, such as indictments and jury instructions," *Descamps v. United States*, 570 U.S. 254, 257 (2013), to

16

Applied here, if the minimum proof required for any New Jersey theft crime does not satisfy each of the elements of the federal generic theft offense, then that theft crime is not a categorical match. That is relevant because New Jersey second-degree robbery – in any of its alternative variations, *see United States v. McCants*, 952 F.3d 416, 427 (3d Cir. 2020) – has commission of a theft crime as a common element. And thus, for robbery to qualify as an aggravated felony theft offense under the INA, every New Jersey theft crime must categorically match the federal generic definition of theft offense.

### C. *New Jersey Second-Degree Robbery*

Applying the categorical approach here, the inquiry is whether a conviction for New Jersey second-degree robbery necessarily meets each element of the federal generic theft offense. As statutorily defined, second-degree robbery in New Jersey is premised on the commission of a theft:

> A person is guilty of robbery if, *in the course of committing a theft*, he:
>
> (1) Inflicts bodily injury or uses force upon another; or
>
> (2) Threatens another with or purposely puts him in fear of immediate bodily injury; or

---

identify which of those alternatives served as the basis for the prior conviction.

17

(3)      Commits or threatens immediately to commit any crime of the first or second degree.

An act shall be deemed to be included in the phrase "in the course of committing a theft" if it occurs in an attempt to commit theft or in immediate flight after the attempt or commission.

N.J. Stat. Ann. § 2C:15-1(a) (emphasis added).[3]  As the statutory text makes clear, although there are three alternative formulations of New Jersey robbery, they share a common element: each must occur during the commission of a theft.  *See State v. Whitaker*, 983 A.2d 181, 190 (N.J. 2009) ("Committing or attempting to commit a theft is a necessary element of the crime of robbery."); *State v. Mejia*, 662 A.2d 308, 318 (N.J. 1995) (explaining that the New Jersey Code of Criminal Justice "incorporates theft as an element of robbery"), *superseded by constitutional amendment on other grounds*, N.J. Const. art. I, ¶ 12; *see also McCants*, 952 F.3d at 425–26 ("[T]he New Jersey robbery statute sets out alternative elements for sustaining a conviction rather than the means of committing the offense.").  Thus, it has long been understood that in New Jersey, "all robberies are thefts." *Mejia*, 662 A.2d at 318; *accord State v. Lopez*, 900 A.2d 779, 784 (N.J. 2006).

---

[3] In the absence of aggravating circumstances, robbery is graded as a crime of the second degree.  *See* N.J. Stat. Ann. § 2C:15-1(b) (explaining that robbery becomes "a crime of the first degree if in the course of committing the theft the actor attempts to kill anyone, or purposely inflicts or attempts to inflict serious bodily injury, or is armed with, or uses or threatens the immediate use of a deadly weapon").

18

When K.A. was convicted of robbery in 2000, New Jersey recognized eight theft offenses – each of which could form a basis for robbery.  At that time, the New Jersey Code of Criminal Justice expressly provided that a person who committed any one of the following offenses was "guilty of theft":

(1)     Theft by unlawful taking or disposition, N.J. Stat. Ann. § 2C:20-3;

(2)     Theft by deception, N.J. Stat. Ann. § 2C:20-4;

(3)     Theft by extortion, N.J. Stat. Ann. § 2C:20-5;

(4)     Theft of property lost, mislaid, or delivered by mistake, N.J. Stat. Ann. § 2C:20-6;

(5)     Receiving stolen property, N.J. Stat. Ann. § 2C:20-7;

(6)     Theft of services, N.J. Stat. Ann. § 2C:20-8;

(7)     Theft by failure to make required disposition of property received, N.J. Stat. Ann. § 2C:20-9; and

(8)     Computer-related theft, N.J. Stat. Ann. § 2C:20-25.[4]

---

[4] Since the time of K.A.'s conviction in 2000, New Jersey has amended two aspects of its code regarding theft offenses.  Neither of those alters the analysis here.  First, in 2003, New

19

Because any of these eight theft crimes could form a basis for second-degree robbery, they each must satisfy the categorical approach for robbery to qualify as a "theft offense" under the INA. They do.

Each of those New Jersey thefts matches the first element of the federal generic definition of theft offense – the taking of property or an exercise of control over property. *See State v. Talley*, 466 A.2d 78, 81 (N.J. 1983) ("The common unifying conception in all these [theft offenses] is the 'involuntary transfer of property.'" (cleaned up) (quoting Final Report of the New Jersey Criminal Law Revision Commission, Vol. II: Commentary (1971), § 2C:20–2, at 216)); *accord State v. Gorman*, 185 A.3d 902, 907 (N.J. Super. Ct. App. Div. 2018). Most of those offenses satisfy this element by explicitly referencing either the taking of property or the exercise of control over property. *See* N.J. Stat. Ann. § 2C:20-3(a), (b)

---

Jersey changed the denomination of the computer-related theft crime so that it became a "computer criminal activity" crime, and not a theft crime. *See* N.J. Stat. Ann. § 2C:20-25. Second, in 2008, New Jersey enacted an additional theft crime: removal of headstones and other markers from gravesites. *See id.* § 2C:20-2.3. That amendment, however, has no bearing on the INA's treatment of K.A.'s robbery conviction because the categorical approach evaluates the range of offenses that could have served as a basis for the conviction – not conduct subsequently criminalized. *See Moncrieffe*, 569 U.S. at 190–91 (instructing courts to "presume that the conviction rested upon nothing more than the least of the acts criminalized" because the categorical approach requires the examination of "what the state conviction necessarily involved" (internal quotation, citation, and alterations omitted)).

(requiring the taking or exercise of control over movable property, or the transfer of any interest in immovable property); *id.* § 2C:20-4 (requiring the obtaining of property); *id.* § 2C:20-5 (requiring the obtaining of property); *id.* § 2C:20-6 (requiring the coming into control of property); *id.* § 2C:20-7 (requiring the receiving or bringing into the state movable property of another); *id.* § 2C:20-9 (requiring the obtaining or retention of property); *id.* § 2C:20-25 (requiring the altering, damaging, taking, destroying of, or exercising of control over computer-related property). Theft of services also meets this element – not because services are property, but because it is through services that property in the form of compensation for those services or entitlement to those services is unlawfully obtained or diverted. *See id.* § 2C:20-8(a), (b).

The second element of the federal generic offense – the lack of consent – is also satisfied. Several of New Jersey's theft crimes satisfy this element under either meaning of consent (as 'assent only' or as 'voluntarily and intelligent assent'). *See id.* § 2C:20-3(a), (b) (unlawful taking, unlawful control over, or unlawful transfer); *id.* § 2C:20-5 (unlawful taking); *id.* § 2C:20-7 (knowing that the property of another has been stolen or believing that it is probably stolen);[5] *id.* § 2C:20-9

---

[5] At a purely theoretical level, it may be possible for a person to commit the crime of receiving stolen property, *see* N.J. Stat. Ann. § 2C:20-7, based on a mistaken belief that abandoned property was in fact stolen, which could undermine the without-consent requirement. But the Supreme Court has admonished courts not to overindulge in "legal imagination" and instead to focus on whether there is "a realistic probability,

21

(breach of agreement as evidence of lack of consent); *id.* § 2C:20-25 (without or exceeding authorization). Other thefts may involve the assent of the victim, but not the victim's voluntary and intelligent assent. *See id.* § 2C:20-4 (theft by deception); *id.* § 2C:20-6 (lost, mislaid, or delivered under a mistake is not voluntary and intelligent assent); *id.* § 2C:20-8(a), (b) (obtaining services available for compensation using deception, threat, or fraud to avoid payment; or diverting services to the benefit of someone not entitled to them). Those offenses predicate theft on deception or coercion. But, as explained above, the better understanding of the without-consent element of the federal generic definition is 'without voluntary and intelligent assent.' And under that construction, theft crimes predicated on deception or coercion would be committed without voluntary and intelligent assent – in satisfaction of this element. *See Talley*, 466 A.2d at 81 (identifying another "common unifying conception" in theft offenses as the appropriation of "property of the victim without

---

not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Moncrieffe*, 569 U.S. at 191 (quoting *Duenas-Alvarez*, 549 U.S. at 193). Such an imagined conflict is particularly inappropriate for the New Jersey offense of receiving stolen property because the INA specifically references one offense of the entire extended family of theft offenses: receipt of stolen property. *See* 8 U.S.C. § 1101(a)(43)(G). This reference to a specific circumstance may render the categorical approach unnecessary for this state offense. *See, e.g.*, *Nijhawan*, 557 U.S. at 32–40 (declining to apply the categorical approach to a monetary threshold in 8 U.S.C. § 1101(a)(43)(M)(i)). Regardless, the abandoned-property hypothetical is too remote a possibility to prevent an otherwise categorical match.

his consent or with consent obtained by fraud or coercion" (quoting Final Report of the New Jersey Criminal Law Revision Commission, Vol. II: Commentary (1971), § 2C:20–2, at 216)); *accord Gorman*, 185 A.3d at 907.

All eight New Jersey theft crimes similarly satisfy the third element of the federal generic theft offense – the criminal intent to deprive the owner of rights and benefits of ownership (even if such deprivation is less than total or permanent). For purposes of the federal generic theft offense, criminal intent encompasses any "blameworthy" mental state. *See Elonis v. United States*, 575 U.S. 723, 734 (2015) (quoting *Morissette v. United States*, 342 U.S. 246, 252 (1952)). The New Jersey Supreme Court has generally recognized that theft is a specific intent crime. *See Lopez*, 900 A.2d at 784 ("Theft is a specific intent crime. It follows that robbery, as an aggravated form of theft, is a specific intent crime as well." (citations omitted)); *see also Mejia*, 662 A.2d at 316 ("Robbery, like larceny and the equivalent statutory offense of theft, requires proof of the defendant's larcenous intent."). Consistent with that assessment, each theft crime requires a criminal mental state among its elements. *See* N.J. Stat. Ann. § 2C:20-3(a) (exercises unlawful control over movable property of another with purpose to deprive him thereof); *id.* § 2C:20-3(b) (transfers any interest in immovable property of another with purpose to benefit himself or another not entitled thereto); *id.* § 2C:20-4 (purposely obtains property of another); *id.* § 2C:20-5 (purposely obtains property of another); *id.* § 2C:20-6 (knowing the identity of the owner and with purpose to deprive that owner); *id.* § 2C:20-8(a) (purposely obtains services which he knows are available only for compensation); *id.* § 2C:20-8(b) (knowingly diverts services of another to which he is not entitled); *id.* § 2C:20-7 (knowingly receives or brings into the

23

state movable property of another knowing that it has been stolen or believing that it is probably stolen); *id.* § 2C:20-9 (purposely obtains or retains property upon agreement or known legal obligation and fails to make the required payment or disposition); *id.* § 2C:20-25 (purposely or knowingly alters, damages, takes, or destroys computer-related property).

For these reasons, each of the theft crimes that could have formed a basis for robbery in New Jersey at the time of K.A.'s offense requires all of the elements of the federal generic theft offense. As a result, each of those crimes constitutes a "theft offense" under the INA. *See* 8 U.S.C. § 1101(a)(43)(G).[6] With that conclusion, it follows that K.A.'s conviction for second-degree robbery necessarily required satisfaction of every element of the federal generic theft offense. Thus, under the categorical approach, at the time of K.A.'s conviction in 2000, second-degree robbery in New Jersey qualified as a theft offense under the INA.

K.A. opposes this conclusion for two reasons, neither of which prevails. First, he contends that New Jersey robbery is not a categorical match with the federal generic theft offense because robbery can be predicated on theft by deception – which, he submits, can be committed with the victim's consent. But that argument rests on the above-rejected premise that, for purposes of the second element of the federal generic theft

---

[6] This does not mean that these are the only New Jersey crimes that can satisfy each of the elements of the federal generic theft offense. *See, e.g.*, N.J. Stat. Ann. § 2C:20-10 (unlawful taking of means of conveyance). It means only that each of these predicate thefts for New Jersey robbery is necessarily a theft offense under the INA.

offense, 'consent' means only 'assent.' Under the correct understanding – that consent means 'voluntary and intelligent assent' – K.A.'s argument fails because assent gained through deception is not voluntary and intelligent.

Second, K.A. relies on the unavailability of the claim-of-right affirmative defense to robbery in New Jersey. Under that defense, proof that the defendant "[a]cted under an honest claim of right to the property or service involved or that he had a right to acquire or dispose of it as he did," generally operates as an affirmative defense to a theft prosecution. N.J. Stat. Ann. § 2C:20-2(c)(2). K.A. couples that with the New Jersey Supreme Court's holding that the claim-of-right affirmative defense is unavailable for robbery, *see Mejia*, 662 A.2d at 320, to contend that a robbery conviction could be based on an honest-but-mistaken claim of right to property. And if so, K.A. submits that his robbery offense could have been based on conduct that would not meet the criminal intent element of the federal generic definition of theft offense. But K.A. misconstrues the categorical approach, which considers only the elements of an offense, and not affirmative defenses. *See Grijalva Martinez v. Att'y Gen.*, 978 F.3d 860, 867 n.4 (3d Cir. 2020); *see also Mathis*, 136 S. Ct. at 2248–50 (emphasizing that the categorical approach focuses on the elements of an offense). And because affirmative defenses have no role in the categorical approach, the availability of the claim-of-right defense for theft but not robbery is inconsequential to whether the elements of K.A.'s robbery conviction categorically match those of the federal generic theft offense.

For these reasons, neither of K.A.'s arguments alter the conclusion that, at the time of K.A.'s conviction, all thefts in

New Jersey, and thus second-degree robbery in New Jersey, categorially matched the federal generic theft offense.

\* \* \*

When K.A. was convicted of second-degree New Jersey robbery and received a "term of imprisonment [of] at least one year," that crime categorially matched the federal generic "theft offense." 8 U.S.C. § 1101(a)(43)(G). His conviction therefore qualifies as an "aggravated felony." *Id.* § 1101(a)(43). And because K.A. was sentenced to at least five years in prison for his aggravated felony conviction, he committed a particularly serious crime for purposes of both asylum and withholding of removal. *See id.* §§ 1158(b)(2)(B)(i), 1231(b)(3)(B)(ii). Accordingly, even if his case were to be reopened – either based on his motion to reopen or his claim that the BIA should have *sua sponte* reopened the proceedings – K.A. would remain ineligible for both forms of relief he seeks. We will therefore deny the petition for review.